Certiorari Denied, No. 31,448. January 5, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-011**

**Filing Date: November 14, 2008**

**Docket No. 27,382**

**ROXANNE MARTINEZ, ORLANDO
SENA, CHARLIE JIMENEZ, JR.,
ADAN CARRIAGA, and CHRISTA OKON,**

      **Plaintiffs-Appellants,**

**v.**

**JOSE CORNEJO,**

      **Defendant-Appellee.**

**and**

**NO. 27, 383**

**RAMON GALLEGOS,**

      **Plaintiff-Appellant,**

**v.**

**ALLSTATE INSURANCE COMPANY,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge**

Berardinelli Law Firm, L.L.C.
David J. Berardinelli
Santa Fe, NM

for Appellants

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Lisa Ma nn
Jennifer A. Noya
Albuquerque, NM

Steptoe & Johnson L.L.P.
Bennett Evan Cooper
Phoenix, AZ

for Appellees

**OPINION**

**FRY, Judge.**

{1}     In this case, we resolve two questions that require us to interpret the Trade Practices and Frauds Act (the TPFA) of the Insurance Code, NMSA 1978, § 59A-16-1 to -30 (1984, as amended through 2007).  First, we consider whether a manager of a group of insurance adjusters can be held personally liable for violations of the TPFA.  We hold that such an employee is subject to the private right of action created by Section 59A-16-30 of the TPFA and therefore reverse, in part, the district court's dismissal of the TPFA claims against Defendant Jose Cornejo.  Second, we consider what statute of limitations applies to the private right of action created by Section 59A-16-30.  We affirm the district court and hold that NMSA 1978, § 37-1-4 (1880), the four-year "catch-all" statute of limitations for actions not otherwise provided for, applies to the private right of action provision of the TPFA.

**BACKGROUND**

{2}     This case arises from a class action suit filed pursuant to the private right of action provision of the TPFA, Section 59A-16-30, which our Supreme Court, in *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, 135 N.M. 397, 89 P.3d 69, construed to allow third-party claimants, like Plaintiffs, the right to bring a cause of action for alleged violations of the TPFA.  Plaintiffs in this case, Roxanne Martinez, Orlando Sena, Ramon Gallegos, Charlie Jimenez, Jr., Adan Carriaga, and Christa Okon, were each injured by an Allstate insured, and all attempted to settle their personal injury claims without going to trial.  Plaintiffs each ultimately went to trial and recovered an amount greater than the settlement offers made by Allstate in pre-trial negotiations.  Plaintiffs then filed a class action suit on behalf of themselves and a class of similarly situated class members against Defendants Allstate Insurance Company, the insurance company responsible for the judgments Plaintiffs recovered in their underlying personal injury litigation, and Jose Cornejo, the manager of Allstate's Albuquerque claims office, alleging, among other things, that Defendants had violated the TPFA. Specifically, Plaintiffs alleged that Allstate and Cornejo had used unfair claims settlement and litigation practices, such as making unreasonably low settlement offers and refusing to negotiate, which forced claimants to litigate their personal injury claims, in violation of Section 59A-16-20(E) and (G) (requiring insurers and other persons to attempt

2

to settle cases in good faith and precluding insurers and other persons from offering substantially less than what is ultimately recovered).

**{3}** Pursuant to Rule 1-012(B)(6) NMRA, Allstate and Cornejo filed a number of motions to dismiss the claims against them. Of the motions relevant to this appeal, Cornejo moved to dismiss the TPFA claims brought against him on the ground that the private right of action provision of the TPFA allows third parties to bring suit against only insurers and agents and that he is neither an insurer nor an agent. Allstate moved to dismiss all claims filed against it by Plaintiff Gallegos on the ground that Gallegos's claims were time-barred.

**{4}** The district court agreed with Cornejo and dismissed the claims brought against him, ruling that he was not subject to personal liability under the TPFA. The district court also agreed with Allstate and dismissed the claims brought by Plaintiff Gallegos, ruling that the statute of limitations applicable to claims brought pursuant to the TPFA is the four-year "catch-all" limitations period and that Gallegos's claims were therefore time-barred.

**{5}** Following the district court's rulings, two separate appeals were filed in this Court. In the first appeal, all of the Plaintiffs challenged the district court's dismissal of the claims against Defendant Cornejo. In the second appeal, Plaintiff Gallegos alone challenged the district court's determination that the four-year "catch-all" statute of limitations barred his claims against Allstate. For convenience, we address the two appeals together in this opinion.

**STANDARD OF REVIEW**

**{6}** On appeal from a dismissal pursuant to a Rule 1-012(B)(6) motion, this Court accepts all facts alleged in the complaint as true and resolves all doubts about the sufficiency of the complaint in favor of the plaintiff's right to proceed. *Forest Guardians v. Powell*, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803. We do not decide whether Plaintiffs will ultimately recover, but only whether they have stated an actionable claim. In this case, determining whether Plaintiffs' complaint states a claim upon which relief can be granted requires us to interpret the meaning of the language in the TPFA and to determine which statute of limitations applies to the private right of action provision of the TPFA. Both of these issues are questions of law that we review de novo. *See Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 8, 132 N.M. 459, 50 P.3d 554 (noting that we "review de novo whether a particular statute of limitations applies"); *Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (explaining that statutory interpretation is a question of law that appellate courts review de novo).

**DISCUSSION**

**I.** **"Persons" Are "Insurers" Who Are Subject to the Private Right of Action Provision of the TPFA**

3

**{7}** Plaintiffs argue that the district court erred when it determined that Jose Cornejo is not an insurer or an agent who is subject to the private right of action provision of the TPFA. § 59A-16-30. In order to address this argument, we look first to the applicable provisions of the TPFA.

**The Scope of the Trade Practices and Frauds Act**

**{8}** The TPFA is a remedial statute that broadly governs the conduct of

> insurers, fraternal benefit societies, nonprofit health care plans, health maintenance organizations, prepaid dental services organizations, motor clubs, agents, brokers, solicitors, adjusters, providers of services contracts pursuant to the Service Contract Regulation Act [NMSA 1978, 59A-58-1 to -18 (2001)] and all other persons engaged in any business which is now or hereafter subject to the superintendent's supervision under the Insurance Code . . . , as well as all alien and foreign insurers delivering or issuing for delivery in New Mexico any certificate or other evidence of coverage.

§ 59A-16-1. Our Legislature enacted the TPFA "to regulate trade practices in the insurance business . . . by defining, or providing for determination of, practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices so defined or determined." § 59A-16-2. The TPFA specifies a number of activities that will constitute unfair trade and claims practices and provides a mechanism by which the superintendent of insurance can enforce the provisions of the TPFA. *See generally* § 59A-16-1 to -30. Importantly, the TPFA also creates a private right of action, which provides that "[a]ny person covered by [the article] who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages." § 59A-16-30.

**{9}** Pursuant to Section 59A-16-30, a person covered by the TPFA is only entitled to bring a private cause of action against an "insurer or agent." Because Plaintiffs have not alleged that Cornejo is an "agent," the question of whether a private right of action is available against Cornejo depends on whether he is included within the meaning of the term "insurer." The general definitional section of the Insurance Code defines an "insurer" as "every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance." NMSA 1978, § 59A-1-8(A) (1984). The TPFA, however, is a self-contained sub-part of the Insurance Code that modifies the definition of insurer and provides that "[f]or the purposes of [the TPFA], the societies, organizations, clubs and persons [mentioned in 59A-16-1] shall be included within the meaning of 'insurer[,]' and contracts issued by them are included within the meaning of 'policy[.]'" § 59A-16-1. Thus, under a plain reading of the statute, the Legislature has broadened the definition of "insurer," for purposes of the TPFA, to include entities and individuals that are not within the definition of insurer elsewhere in the Insurance Code.

4

**{10}** Cornejo argues that interpreting the term "insurer" to include persons such as himself for purposes of the TPFA would conflict with the Insurance Code's general definition of insurer in Section 59A-1-8, a violation of the rule that a statute whose construction is in question is to "be read in connection with other statutes concerning the same subject matter." *Quantum Corp. v. State Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848. In determining the meaning of the term "insurer" in the TPFA, however, this rule is inapplicable because the Legislature has expressly limited the definition in question to apply only to the TPFA. *See* § 59A-16-1. Thus, looking solely at the meaning of "insurer" as defined in Section 59A-1-8 would require us to ignore the Legislature's clearly expressed intention that the term be defined differently for purposes of the TPFA. Because the definition of insurer in Section 59A-1-8 does not govern our interpretation of the meaning of that term in Section 59A-16-1, we now determine the scope of the broader definition of insurer stated in Section 59A-16-1.

**Persons Are Included Within the Meaning of the Term "Insurer" for Purposes of the TPFA**.

**{11}** In interpreting the scope of the private right of action provision of the TPFA, this Court's primary goal is to determine and give effect to the intent of the Legislature. *See State v. Moya*, 2007-NMSC-027, ¶ 6, 141 N.M. 817, 161 P.3d 862. To determine the intent of the Legislature, our first step is to look at the language used by the Legislature and the plain meaning of that language. *Id.* This plain meaning rule requires us to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *See Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153. "When the meaning of a statute is truly clear—not vague, uncertain, ambiguous, or otherwise doubtful—it is of course the responsibility of the judiciary to apply the statute as written." *State v. Lewis*, 2008-NMCA-070, ¶ 6, 144 N.M. 156, 184 P.3d 1050 (internal quotation marks and citation omitted), *cert. denied*, 2008-NMCERT-004, 144 N.M. 47, 183 P.3d 932; *see* 2A Norman J. Singer & J. D. Shambie Singer, *Statutes and Statutory Construction*, § 45:12, 126 (7th ed. 2007) (stating that "[a] statute should be read according to its natural and most obvious import of language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation" (footnote omitted)). While we are permitted to depart from the plain meaning rule to avoid a "formalistic and mechanical statutory construction" that "would be absurd, unreasonable, or contrary to the spirit of the statute," where there is no ambiguity in the plain language of a statute, and where no absurd or unreasonable result will occur, we apply the plain meaning rule and refrain from further statutory construction. *Moya*, 2007-NMSC-027, ¶ 6 (internal quotation marks and citation omitted); *see, e.g., Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 54, 140 N.M. 77, 140 P.3d 498 (declining to depart from the plain language of a statute because there was no ambiguity in the language). Because application of the plain meaning rule in this case will not create a result that is absurd, unreasonable, or contrary to the spirit of the statute, we apply the plain meaning rule to our interpretation of the TPFA.

**{12}** Subsection 1 of the TPFA, which defines the TPFA's scope, is divided into two

sentences. The first sentence provides that the TPFA

> shall apply as to insurers, fraternal benefit societies, nonprofit health care plans, health maintenance organizations, prepaid dental services organizations, motor clubs, agents, brokers, solicitors, adjusters, providers of services contracts pursuant to the Service Contract Regulation Act . . . and all other persons engaged in any business which is now or hereafter subject to the superintendent's supervision under the Insurance Code.

§ 59A-16-1. Thus, the plain language of this sentence indicates, and the parties do not dispute, that the TPFA applies to *all* of the named entities and individuals.

{13}    The second sentence of Subsection 1 states that "[f]or the purposes of [the TPFA], the societies, organizations, clubs *and persons* shall be included within the meaning of 'insurer.'" *Id.* (emphasis added). The Legislature's use of the definite article "the" immediately preceding "societies, organizations, clubs and persons" indicates that "societies, organizations, clubs and persons" refers to the fraternal benefit societies, health maintenance organizations, prepaid dental services organizations, motor clubs and persons listed in the first sentence. Thus, the second sentence of Section 59A-16-1 incorporates within the meaning of insurer, for purposes of the TPFA, all "persons" listed in the first sentence. Consequently, the plain language of the statute indicates that the term "insurer" includes agents, brokers, solicitors, adjusters, providers of service contracts pursuant to the Service Contract Regulation Act, and all other persons engaged in any business that is subject to the superintendent's supervision under the Insurance Code.

{14}    Cornejo argues that the legislative history surrounding the inclusion of "persons" in the TPFA indicates that the Legislature did not intend for "persons" to mean the persons listed in the first sentence of Section 59A-16-1. Thus, Cornejo essentially urges us to find ambiguity in the Legislature's use of the word "persons" and depart from the plain meaning rule. Cornejo's argument hinges on the 2001 amendment to Section 59A-16-1, which added the phrase "providers of services contracts pursuant to the Service Contract Regulation Act" to the first sentence and altered the second sentence by inserting the phrase "and persons."[1]

{15}    Cornejo correctly notes that the amendments to the TPFA were included in a bill that created the Service Contract Regulation Act—an act that defines what a service contract provider is and sets out the specific obligations and duties that service contract providers must abide by. *See* 2001 N.M. Laws ch. 206, §19. Because the amendment to the TPFA

---

[1]The amendment also deleted the word "such" in the second sentence of Section 59A-16-1 so that the statute now reads "the societies, organizations, clubs and persons" rather than "such societies, organizations, and clubs." The substitution of "the" for "such" does not alter our conclusion that the second sentence refers to the specifically listed entities and persons in the first sentence.

was included within this bill, Cornejo argues that the Legislature intended the phrase "and persons" in the second sentence to refer only to the newly included "providers of services contracts pursuant to the Service Contract Regulation Act." *Id.*

**{16}**     Cornejo contends that if the Legislature had intended "persons" to refer to all of the persons listed in the first sentence of Section 59A-16-1, it would have used language such as "all of the foregoing."   What Cornejo's argument fails to address, however, is that throughout the Service Contract Regulation Act, the Legislature consistently uses the term "providers" to refer to service contract providers and never uses the term "persons" to refer to service contract providers. *See, e.g.*, § 59A-58-4 (stating that providers shall engage in certain activities and comply with the statute).  In our view, if the Legislature had intended only to expand the scope of the definition of insurer to include service contract providers, it would have used the term "providers," as it did throughout the rest of the Service Contract Regulation Act, rather than the term "persons."  We therefore decline to read any ambiguity into the term "persons" in Section 59A-16-1 as Cornejo urges us to do.  "A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." *State v. Elmquist*, 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct. App. 1992).  We are unable to conclude that "persons," as used in the TPFA, is susceptible to two reasonable meanings.

**{17}**     Cornejo also argues that applying the plain meaning rule to Section 59A-16-1 will violate the canons of statutory construction by rendering certain words within the TPFA, such as the word "agent" in Section 59A-16-30, superfluous because agents are persons and are therefore included within the definition of insurer in Section 59A-16-1.  We are unpersuaded.  As noted earlier in this opinion, the first and primary step in statutory construction is to apply the plain language of a statute if that language is clear and unambiguous.  It is only when language is ambiguous that this Court will engage in further statutory construction, such as the application of the rule against rendering language superfluous. *Johnson v. Francke*, 105 N.M. 564, 566, 734 P.2d 804, 806 (Ct. App. 1987) (explaining that "state statutes are to be given effect as written and, where they are free from ambiguity, there is no room for construction").  Because we hold that the Legislature's addition of the term "and persons" is a clear and unambiguous expansion of the scope of the meaning of insurer, we see no need to depart from the plain meaning rule and apply any further rules of statutory construction. *See Cobb*, 2006-NMSC-034, ¶ 54 (declining "to depart from the plain language of [a statute] because there is no ambiguity within [the] statute").

**{18}**     We therefore hold that by amending the TPFA to include the phrase "and persons," the Legislature intended to broaden the definition of insurer and that the persons listed in the first sentence of Section 59A-16-1 are expressly included within the meaning of insurer. Thus, for purposes of the TPFA, the term "insurer" includes "agents, brokers, solicitors,

7

adjusters, providers of services contracts pursuant to the Service Contract Regulation Act[2] and all other persons engaged in any business which is now or hereafter subject to the superintendent's supervision under the Insurance Code." § 59A-16-1 (citations omitted).

**A Private Right of Action Exists Against Managerial Employees Like Defendant Cornejo**

{19}     Having concluded that the persons listed in the first sentence of Section 59A-16-1 are incorporated into the definition of insurer and therefore subject to the private right of action provision of the TPFA, all that remains to be determined is whether Cornejo is included within that definition as well.  Cornejo suggests that because Plaintiffs never alleged that he was an adjuster, he cannot be held personally liable even if we hold, as we have, that adjusters, as persons, are included within the definition of insurer and subject to a private right of action.  Plaintiffs have alleged that Cornejo was the "Market Claims Manager . . . for Allstate's Albuquerque Market Claims Office" and that he was responsible for the "implementation and enforcement of Allstate's claim handling protocols in New Mexico" and for "ensuring that Allstate's New Mexico adjusters and employees comply with all requirements for fair, prompt and equitable claim practices stated in the New Mexico [Unfair Claims Practices Act] while handling every New Mexico [Mandatory Financial Responsibility Act (MFRA), NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2003)] claim made under an Allstate MFRA policy."  Plaintiffs' allegations therefore describe conduct sufficient to make Cornejo a "person" subject to the supervision of the superintendent of insurance.  Thus, Cornejo, as a manager of a group of insurance adjusters, is a "person[] engaged in any business which is now or hereafter subject to the superintendent's supervision under the Insurance Code" and, as such a person, he is included within the meaning of "insurer" for purposes of the TPFA. § 59A-16-1.  Because Cornejo falls within the meaning of "insurer," and because a private right of action may be brought against an insurer, we conclude that a private right of action may be brought against Cornejo.

{20}     We are not persuaded by Cornejo's reliance on a statement made by the *Hovet* Court that "[t]he private right of action under the [TPFA] is limited by statute to violations by insurance companies and their agents." 2004-NMSC-010, ¶ 27. *Hovet*'s statement does not preclude this Court from determining that individual employees of an insurance company may be held personally liable for violations of the TPFA. *Hovet* did not directly address the question before us—whether individual employees such as Cornejo can be held personally liable—and it did not determine the scope of the definition of "insurer" for purposes of the TPFA.  Instead, *Hovet* merely paraphrased the language in Section 59A-16-30 without considering the expanded definition of the term "insurer" in Section 59A-16-1.

---

[2]The statutory definition of a service contract provider indicates that service contract providers are also persons. *See* § 59A-58-2(G) (defining service contract "provider" as "a *person* who is contractually obligated to a holder" (emphasis added) (internal quotation marks omitted)).

**{21}** Finally, in support of his argument that a private right of action should not exist against individual employees like himself, Cornejo cites a number of cases interpreting a Pennsylvania statute that creates a private right of action against an insurer but not against an individual employee. While Pennsylvania does not allow a private right of action to be brought against an insurance adjuster or other individual employee, *see American Home Assurance Co. v. Merck & Co.*, 462 F. Supp. 2d 422, 434 (S.D.N.Y. 2006), the absence of a private right of action against an individual is based on the Pennsylvania statute's definition of "insurer" as a person "who is doing, has done, purports to do, or is licensed to do an insurance business." *See Lindsey v. Chase Home Fin. L.L.C.*, No. 3:CV-06-1220, 2006 WL 2524227, at *4 (M.D. Pa. Aug. 30, 2006) (mem.) (emphasis omitted) (internal quotation marks and citation omitted); *see also* 42 Pa. Cons. Stat. Ann. § 8371 (1990) (providing a private right of action against an insurer who engages in bad faith). Thus, the Pennsylvania cases do not address the issue presented in this case—whether a legislative expansion of the meaning of "insurer" allows a private right of action to be brought against an individual employee of an insurance company. We therefore do not find this out-of-state authority to be persuasive.

**{22}** Our holding today is entirely consistent with the express purpose and spirit of the TPFA, which is to "promote ethical settlement practices within the insurance industry." *Hovet*, 2004-NMSC-010, ¶ 17. Holding individual employees of insurance companies personally liable for violations of the TPFA furthers this policy by helping to promote ethical settlement practices within the industry. Conceivably, the Legislature could have believed that the previous scope of the private right of action was insufficient to further its goal of promoting ethical insurance practices when it expanded the scope to include persons. *Hovet* informs us that "[t]he private right of action is one means toward th[e] end" of encouraging ethical claims practices within the insurance industry. *Id.* ¶ 14. The Legislature's decision to expand the scope of the private right of action by broadening the definition of insurer is just one other means toward that same end.

**{23}** In addition, our holding does not impose any new or more stringent obligations on persons such as Cornejo who are subject to the TPFA. Both parties acknowledge that individual employees such as Cornejo are, and always have been, required to comply with the obligations imposed by the TPFA and refrain from engaging in unfair or deceptive claims practices. While our holding clarifies who may be sued to enforce the TPFA under its private right of action provision, we do not in any way alter the requirement that all persons conform to the TPFA and refrain from engaging in unfair or deceptive trade and claims practices. Thus, while we hold that Cornejo is subject to the TPFA's private right of action, this does not change the fact that he has always been required to comply with the provisions of the TPFA.

**The Effective Date of the Amendments to the TPFA**

**{24}** While we hold today that a private right of action exists against the persons listed in Section 59A-16-1, we also acknowledge that prior to the 2001 amendment to the TPFA, the

9

definition of insurer, and consequently the scope of the private right of action, did not extend to persons like Cornejo. Prior to the addition of "persons" in 2001, "insurer" was defined to include only "societies, organizations, and clubs." Thus, prior to July 1, 2002, the effective date of the 2001 amendment, no private right of action would have been available against Cornejo. Consequently, only those plaintiffs who can demonstrate that Cornejo was involved in the handling of their claims after July 1, 2002, may assert a private right of action against him. *See Howell v. Heim*, 118 N.M. 500, 506, 882 P.2d 541, 547 (1994) (explaining that "New Mexico law presumes that statutes and rules apply prospectively absent a clear intention to the contrary").

**{25}** Because we accept all facts alleged in the complaint as true and resolve all doubts in favor of Plaintiffs' right to proceed to trial on review of a Rule 1-012(B)(6) motion to dismiss, we conclude that those Plaintiffs who obtained a final judgment against an Allstate insured after July 1, 2002, have stated a claim upon which relief could be granted at trial. Accepting all facts in the complaint as true, Cornejo, as the manager of the Allstate regional market claims office, could have been involved in settlement negotiations up to the time that a final judgment was entered. Of the named Plaintiffs, only three, Roxanne Martinez, Orlando Sena and Christa Okon, obtained final judgments after July 1, 2002.[3] Thus, those Plaintiffs have stated actionable claims and may proceed to trial. As for the remaining named Plaintiffs, however, we conclude that because they all obtained final judgments prior to the effective date of the amendment to the TPFA, no private right of action exists against Cornejo because his involvement with their claims would have ended at the time that a final judgment was entered in the underlying litigation, if not much earlier.[4] As for the class members about whom we have no information, we leave the determination of the viability of their claims for the district court if and when it becomes necessary.

**{26}** We therefore reverse the dismissal of Orlando Sena's, Roxanne Martinez's and Christa Okon's TPFA claims against Cornejo and affirm the district court's dismissal of the claims against Cornejo brought by Ramon Gallegos, Charlie Jimenez, Jr., and Adan Carriaga.

## II. The Applicable Statute of Limitations for Violations of the TPFA

**{27}** Plaintiff Gallegos appeals the dismissal of his claims against Allstate and argues that the district court erred in applying the four-year "catch-all" statute of limitations found in

---

[3]According to the complaint, Orlando Sena obtained a final judgment on February 27, 2004, Roxanne Martinez obtained a final judgment against Allstate on October 31, 2002, and Christa Okon obtained a final judgment on December 9, 2003.

[4]Plaintiff Charlie Jimenez Jr. obtained a final judgment on July 11, 2000, Ramon Gallegos obtained a final judgment on June 8, 1999, and Adan Carriaga obtained a final judgment on October 10, 2001.

Section 37-1-4. Gallegos argues that the district court should have applied NMSA 1978, § 37-1-3 (1975), the six-year statute of limitations for actions founded upon a written contract, instead of the four-year limitations period for actions not otherwise provided for. Allstate argues that the district court either correctly applied the four-year statute of limitations or, in the alternative, that the district court erred and should have applied NMSA 1978, § 37-1-8 (1976), the three-year statute of limitations for injuries to the person. We hold that Section 37-1-4, the four-year statute of limitations for actions not otherwise provided for, applies to suits brought pursuant to Section 59A-16-30, the private right of action provision of the TPFA, and we affirm the district court's dismissal of all claims brought by Ramon Gallegos. We reject Allstate's alternative argument that Section 37-1-8, the three-year limitations period for personal injuries actions, applies to violations of the TPFA because we hold that violations of the TPFA do not constitute injuries to the person.

**{28}** This Court has previously addressed the statute of limitations applicable to the TPFA in our decision in *Nance v. L.J. Dolloff Associates, Inc.*, 2006-NMCA-012, ¶ 22, 138 N.M. 851, 126 P.3d 1215. While *Nance* stated that TPFA claims are covered by the four-year statute of limitations, the case involved an unwritten insurance contract, and this Court did not extensively consider the issue. Because Gallegos argues that the nature of a TPFA claim is contractual, we take this opportunity to elaborate on our holding in *Nance* and to determine the nature of a third-party claim brought pursuant to the private right of action provision of the TPFA. We ultimately reach the same conclusion as we did in *Nance*—violations of the TPFA are statutory in nature and are governed by the four-year statute of limitations found in Section 37-1-4.

## Applicable Statute of Limitations

**{29}** We look to "[t]he nature of the right sued upon, and not the form of action or relief demanded, [to] determine[] the applicability of the statute of limitations" to a cause of action. *Rito Cebolla Invs., Ltd. v. Golden W. Land Corp.*, 94 N.M. 121, 126-27, 607 P.2d 659, 664-65 (Ct. App. 1980) (citation omitted). In order for a cause of action "[t]o come within the six year limitation period 'founded upon any . . . contract in writing,'" which Gallegos argues should apply to the TPFA, "[the] action must be brought for breach of contract, one which requires a policy to do the things for the non[-]performance of which the action is brought." *Id.* at 127, 607 P.2d at 665 (second alteration in original) (citations omitted). Thus, in order for us to apply the six-year statute of limitations to the third-party right of action under the TPFA, the nature of the right sued upon must be based on the breach or nonperformance of a term in a written contract.

## Third-Party Claimant's Right to Sue Under the TPFA Is Not Contractual in Nature

**{30}** Gallegos's complaint alleges that Allstate has violated the TPFA, not that Allstate has breached any contractual duties. In order to frame his claim as one founded on a contract, Gallegos argues that he is deemed to be the intended beneficiary of the insured tortfeasor's insurance policy and that Allstate has a contractual obligation to comply with

11

the TPFA because a violation of the TPFA is a breach of that contractual obligation. Gallegos further argues that the history of the TPFA, the common law insurance bad faith cause of action, and the cases recognizing a third-party beneficiary's right of action indicate that a private suit brought pursuant to the TPFA is contractual in nature.

**{31}**     In support of his argument, Gallegos contends that our Supreme Court's holdings in *Russell v. Protective Insurance Co.*, 107 N.M. 9, 751 P.2d 693 (1988) *superseded by statute as stated in Meyers v. Western Auto*, 2002-NMCA-089, 132 N.M. 675, 54 P.3d 79, and *Hovet*, 2004-NMSC-010, indicate that a third party has a contractual relationship with a tortfeasor's insurer such that the insurer's violation of the TPFA constiues a breach of contract. Gallegos's argument hinges on the *Hovet* and *Russell* Courts' use of the term "intended beneficiary" when explaining the relationship among the third-party claimants who sue for bad faith under the TPFA, the insured tortfeasor whose negligence must be judicially determined before a TPFA action can be brought, and the insurer with which the tortfeasor has an insurance policy. Contrary to Gallegos's assertions, *Russell* and *Hovet* do not stand for the proposition that a TPFA action is contractual in nature. Instead, *Hovet* and *Russell* merely held that the TPFA should be broadly construed to allow third-party claimants to bring a private action against an insurer that violates the TPFA. In order to reach this result, both *Hovet* and *Russell* determined that the Legislature did not intend to use the term "insured" in its traditional sense such that only the individual who actually signed an insurance contract would have a statutory action under the TPFA.

**{32}**     In *Russell*, an employee sued his employer's workers' compensation carrier alleging that the insurer had violated the TPFA by failing to settle his claim in good faith. 107 N.M. at 10, 751 P.2d at 694. *Russell* rejected the insurer's argument that only the first party insured—the employer—could bring a private right of action under the TPFA and held that the Legislature intended to expand the notion of insured to "parties other than those who may have signed a written contract of insurance beneath a blank reading 'insured.'" *Id.* at 13, 751 P.2d at 697. While *Russell* used both contract and tort principles as a tool to aid its analysis of the scope of the term "insured" as used in the TPFA, the Court did not hold that the nature of a cause of action under the TPFA is contractual. *See id.* at 11, 751 P.2d at 695. In addition, in holding that the TPFA should be broadly construed, *Russell* rejected "the strict limitations of privity of contract which the respondents" sought to impose by noting that "*non-contractual* liability of a promisor to a third party is valid when it is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach." *Id.* at 13, 751 P.2d at 697 (emphasis omitted) (internal quotation marks and citation omitted). Thus, rather than recognizing that an insurer's obligations to a third party arise from the insurance contract, *Russell* recognized that the insurer's obligations and therefore the private right of action arise from the policy of the TPFA itself. *Id.*

**{33}**     If *Russell* created any doubt as to whether the nature of a TPFA claim is statutory, that doubt was dispelled by the Court's more recent holding in *Hovet*. *Hovet*, like *Russell*, construed the TPFA to determine whether a third-party claimant is able to bring a private

right of action under the TPFA. While *Russell* addressed whether an employee is able to sue for bad faith in a workers' compensation context, *Hovet* arose in the context of vehicular accidents and addressed whether the victim of a negligent tortfeasor is able to sue the tortfeasor's insurer if it engages in bad faith while settling the victim's personal injury claims. 2004-NMSC-010, ¶ 17. While *Hovet* recognized that these third-party claimants have a right to sue the insurer for violating the TPFA, *Hovet*, like *Russell*, did not indicate that the nature of the TPFA action is contractual. Instead, *Hovet* specifically and repeatedly emphasized that it was recognizing a statutory cause of action, 2004-NMSC-010, ¶¶ 19 n.2, 28, and that "compulsory automobile liability insurance laws can . . . be read as *legislative recognition* of the victim as an intended beneficiary of the insurance policy." *Id.* ¶ 20 (emphasis added) (internal quotation marks and citation omitted). Thus, *Hovet* stands for the proposition that the third-party right of action brought pursuant to the TPFA arises from statutory obligations imposed on insurers—not contractual obligations.

**{34}**    In recognizing that this statutory obligation exists under the TPFA, *Hovet* noted that *Russell* had allowed "a third party, who can demonstrate a *special* beneficiary status, [to] sue for unfair claims practices under the Insurance Code," *Hovet*, 2004-NMSC-010, ¶ 17 (emphasis added), and that "strong public policy and judicial precedent . . . affords third-party claimants a *special, if not unique*, place in our jurisprudence." *Id.* ¶ 24 (emphasis added). This special and unique place in our jurisprudence is one that recognizes that injured parties have legitimate interests in an insurance policy and the manner in which their claims are settled, but that does not give them the same rights as first-party insureds who can sue for breach of contract.

**{35}**    As a third-party claimant, Gallegos is like an incidental beneficiary of the contract between Allstate and its insured. He is one who "is neither the promisee of a contract nor the party to whom performance is to be rendered," and although he "will derive a benefit from its performance" he has no personal right to sue for breach of contract. *See Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 49-50, 811 P.2d 81, 82-83 (1991) (describing the difference between a third-party beneficiary who can sue on the contract and an incidental beneficiary who merely benefits from a contract (internal quotation marks and citation omitted)). Because we hold that Gallegos's claims against Allstate are solely derived from statute and that he possesses no right to sue for breach of contract, we need not address Gallegos's argument that the provisions of the TPFA are read into every insurance policy purchased pursuant to the MFRA such that a violation of the TPFA constitutes a breach of contract. Where, as here, a party has no rights under a contract, any statutory duties that may be incorporated into the contract are irrelevant.

**The Nature of the Common Law Bad Faith Insurance Cause of Action**

**{36}**    In addition to arguing that *Hovet* and *Russell* hold that a TPFA action is contractual, Gallegos also argues that "[t]he majority of authorities and courts agree that the statute of limitations applicable to written contracts, and not torts, controls bad faith actions against insurers." What this argument fails to acknowledge, however, is that Gallegos has no

13

contract with Allstate and that his claim is a statutory claim, not a common law bad faith claim. Those courts that have applied a contract statute of limitations to bad faith insurance actions have done so in the context of common law bad faith claims asserted by an *insured* against an insurer, not by a third-party claimant against an insurer. *See, e.g., Roldan v. Allstate Ins. Co.*, 544 N.Y.S.2d 359, 359, 368-69 (N.Y. App. Div. 1989) (allowing a third party to sue to enforce rights assigned to him by the first party insured); *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198, 200 (Cal. 1958) (in bank).

**{37}**    Despite the differences between his third-party claims under the TPFA and the common law bad faith insurance action, Gallegos argues that we should look to the nature of the common law bad faith action to determine the nature of the statutory action. Gallegos argues that because the common law bad faith insurance action sounds in both contract and tort, we are obligated to apply the six-year statute of limitations for actions founded on a contract to violations of the TPFA. *See Crawford v. Am. Employers' Ins. Co.*, 86 N.M. 612, 619, 526 P.2d 206, 213 (Ct. App. 1974) (noting that the "breach of the duty of good faith sounds in both contract and tort"), *rev'd on other grounds, Am. Employers' Ins. Co. v. Crawford*, 87 N.M. 375, 376, 533 P.2d 1203, 1204 (1975).

**{38}**    We are not persuaded. The common law of bad faith is not relevant because "[t]hird-party suits against insurers are not allowed at common law." *See King v. Allstate Ins. Co.*, 2007-NMCA-044, ¶ 14, 141 N.M. 612, 159 P.3d 261, *cert. denied*, 2007-NMCERT-004, 141 N.M. 568, 158 P.3d 458. Gallegos therefore could not bring a common law insurance bad faith action against Allstate and is limited to bringing his claims solely under the statutory rights granted by the TPFA. Nonetheless, we briefly address Gallegos's argument to underscore the fact that the nature of the common law bad faith action is fundamentally different from the nature of an action brought pursuant to the TPFA.

**{39}**    In *Dairyland Insurance Co. v. Herman*, 1998-NMSC-005, ¶ 15, 124 N.M. 624, 954 P.2d 56, our Supreme Court explained the nature of a common law insurance bad faith claim by noting that an insurer who, in bad faith, fails to settle a claim within policy limits is liable for the entire judgment against an insured "because when damages are likely to exceed policy limits, the insurer risks exposing its insured to even greater liability by going to trial rather than settling." *Id.* The Court went on to explain that "the insurer has a good-faith duty to minimize, if not eliminate, its insured's liability," a duty which requires "a balancing of the interests of itself and its insured, the reasonableness of the claimant's demands, and the probable outcome of litigation as opposed to settlement." *Id.* ¶ 28. Because insureds obtain insurance policies to avoid being held personally liable for their negligence, an insurer's bad faith refusal to settle a valid claim can be viewed as a breach of the insurance contract. *Id.* ¶ 12 (explaining that "there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract").

**{40}**    While the common law bad faith insurance action is concerned with enforcing a contractual obligation to avoid exposing the insured to personal liability, TPFA claims are statutory actions with a purpose separate from and independent of the common law bad faith

14

insurance action—a purpose that promotes "ethical settlement practices within the insurance industry." *Hovet*, 2004-NMSC-010, ¶ 17. The private right of action under the TPFA is not founded on or related to any common law liability or contractual obligation. Instead, as *Hovet* explained, allowing third parties to file a claim for alleged violations of the TPFA is a "statutory cause of action based in the Insurance Code" that is "consistent with a statutory scheme that was intended to benefit both insureds and third-party claimants." *Id.* ¶¶ 19 n.2, 17. As *Hovet* emphasized, it was recognizing "the *statutory* duty under [the TPFA], to attempt reasonable settlement efforts of an insured's claims, [which] includes . . . attempting in good faith to settle the claim of a third party." *Id.* ¶ 21 (emphasis added) (internal quotation marks and citation omitted).

**{41}** Thus, the purpose of the private right of action under the TPFA is distinctly different from the purpose of the common law insurance bad faith action. The common law action, which enforces the contractual obligations between an insurer and an insured, has no concern for the effect an insurer's refusal to settle has on the third party. Under a common law theory, the insurer is only obligated to balance its interests against the interests of the insured—not against the interests of a third party. In contrast, the purpose of the private right of action—promoting ethical claims practices in the insurance industry—is directly concerned with the effect an insurer's actions has on third parties. *See id.* ¶¶ 14, 15 (noting that third-party claimants are often the only parties affected by failure to settle a claim in good faith). This purpose, and consequently the nature of the third-party right of action, "stems not from the private insurance agreement[,] but from a duty imposed by statute." *Lees v. Middlesex Ins. Co.*, 594 A.2d 952, 956 (Conn. 1991) (rejecting an argument that violations of Connecticut's TPFA are contractual in nature because the duty is imposed by statute, not by the policy); *see Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 610-11 (W. Va. 1998) (refusing to apply a contract statute of limitations to unfair claims practices claims because while first party claims are contractual in nature, third-party claims are tortious in nature). By granting a private right of action to third parties for the purpose of promoting ethical claims practices within the insurance industry, our Legislature created a new right of action that did not exist at common law. *See King*, 2007-NMCA-044, ¶ 14. The nature of this new right of action is neither contractual nor tortious. Instead, as the *Hovet* Court emphasized, this is a statutory cause of action arising from the Insurance Code.

**{42}** As we have already noted, "[t]he nature of the right sued upon, and not the form of action or relief demanded, determines the applicability of the statute of limitations." *Rito Cebolla Invs., Ltd.*, 94 N.M. at 126-27, 607 P.2d at 664-65. Because we hold that the nature of the third-party right of action under the TPFA is statutory, not contractual, the six-year statute of limitations for actions founded upon a contract does not apply to third-party actions brought pursuant to the TPFA.

**The TPFA's Private Right of Action Provision is Not Subject to a Three-Year Statute of Limitations**

**{43}** Allstate argues that because the underlying cause of action in this case was for bodily

15

injuries sustained in a vehicular accident, the three-year statute of limitations for injuries to the person should apply. In support of this argument, Allstate cites *American General Fire & Casualty Co. v. J.T. Construction Co.*, 106 N.M. 195, 740 P.2d 1179 (Ct. App. 1987), where this Court applied a three-year statute of limitations to a suit seeking contribution for workers' compensation benefits because the underlying basis of the claim was one for personal injury. The plaintiff in *American General* was a workers' compensation carrier seeking reimbursement from an alleged third-party tortfeasor for a settlement the carrier had paid to an employee. *Id.* at 195, 740 P.2d at 1180. The carrier claimed that the defendant had caused the employee's injuries by negligently failing to inspect the scaffolding from which the employee fell. *Id.* We held that because the three-year limitations period would have applied if the employee had sued the scaffolding company directly, the compensation carrier was subject to the same limitations period because it was suing under the same negligence theory as the employee would have sued under had he not assigned his rights to the compensation carrier when he settled his claims. *Id.* By contrast, in this case, Gallegos is not suing under the same negligence theory that was the basis for his underlying personal injury actions. In fact, a plaintiff cannot bring a third-party claim under *Hovet* until the underlying personal injury action is fully adjudicated and a final judgment has been obtained. 2004-NMSC-010, ¶ 26. Thus, unlike the plaintiff in *American General* who was seeking to litigate the underlying facts of the employee's personal injury, Gallegos is seeking to litigate allegedly unfair claims settlement practices that occurred in the course of litigating his underlying personal injury action, not the actual facts of his personal injuries. Therefore, we hold that the three-year statute of limitations is inapplicable to violations of the TPFA.

**The Four-Year Statute of Limitations Period for Actions Not Otherwise Provided for Applies to Violations of the TPFA**

**{44}** Having determined that the nature of an alleged violation of the TPFA is neither contractual nor involves an injury to the person, we hold that Section 37-1-4, which provides that "all other actions not herein otherwise provided for and specified [must be brought] within four years," is the applicable limitations period for actions brought pursuant to the TPFA.[5] The third-party claim brought by Gallegos alleges that Allstate and Cornejo have violated the statutory provisions of the TPFA. As we have previously recognized, where "claims [are] founded on violations of statutes, the claims fall within 'other unspecified actions' under the four-year statute of limitations set forth in Section 37-1-4." *Nance*, 2006-NMCA-012, ¶ 22 (applying four-year statute of limitations to violations of the TPFA). We

---

[5]Other jurisdictions that recognize the third-party right of action for unfair claims practices provide much shorter limitations periods. Montana, for example, only provides third-party claimants one year to bring a cause of action for violations of the statutory duties. *See* Mont. Code Ann., § 33-18-242(7)(a), (b) (1987) (providing a one-year limitations period for third-party claimants and a two-year period for insureds). While we are required by statute to apply the four-year statute of limitations, we believe that a far shorter time period, like that provided by Montana, would be sufficient.

16

therefore affirm the district court's determination applying the four-year "catch-all" statute of limitations and dismissing Gallegos's TPFA claims.

**CONCLUSION**

**{45}** We hold that a managerial employee such as Jose Cornejo is subject to the private right of action provision of the TPFA and that the four-year statute of limitations period stated in Section 37-1-4 applies to actions brought pursuant to the private right of action provision of the TPFA. We reverse the dismissal of the claims against Jose Cornejo brought by Roxanne Martinez, Orlando Sena, and Christa Okon, we affirm the dismissal of the claims against Jose Cornejo brought by Charlie Jimenez, Jr., and Adan Carriaga, and we affirm the district court's dismissal of all claims brought by Ramon Gallegos.

**{46}** **IT IS SO ORDERED**.

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**MICHAEL E. VIGIL, Judge**

Topic Index for *Martinez v. Cornejo,* No. 27,382

| | |
|---|---|
| **AE** | **Appeal and Error** |
| AE-SR | Standard of Review |
| | |
| **CP** | **Civil Procedure** |
| CP-CA | Class Actions |
| CP-FC | Failure to State a Claim |
| CP-MT | Motion to Dismiss |
| CP-TL | Time Limitations |
| | |
| **IN** | **Insurance** |
| IN-BF | Bad Faith |
| IN-GF | Good Faith |
| IN-IP | Insurance Carrier as Party |
| IN-ID | Insurance Code |

IN-MV        Motor Vehicle Insurance
IN-RI         Regulation of Insurance
IN-SE        Settlement
IN-UP       Unfair Insurance Practices Act

**MS**           **Miscellaneous States**
MS-TP       Trade Practices and Fraud Act

**ST**            **Statutes**
ST-IP         Interpretation
ST-RC       Rules of Construction