# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __January 29, 2015____

**NO. 31,972**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**NORMAN BENALLY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Hector H. Balderas, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellant

Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

{1}     The State appeals the district court's dismissal of a forfeiture action on the ground that the State failed to file a complaint within the period designated by statute. The State makes several policy-based arguments in support of its position that the thirty-day period specified in the Forfeiture Act should begin on the date the property subject to forfeiture was discovered rather than on the date the State took custody of the property. We conclude that the State's position is contrary to the plain language of the statute and thus do not reach the State's policy arguments. We affirm.

**BACKGROUND**

{2}     The essential facts are simple and undisputed. On June 23, 2011, officers stopped Norman Benally (Defendant) for driving with a headlight out. In the course of the stop, the officers impounded the vehicle. The vehicle was held in the Gallup impound lot where it was secured.

{3}     Five days later, on June 28, 2011, a search warrant for the vehicle was issued and officers searched the vehicle the next day, June 29, 2011. The search uncovered $1295, among other items. On July 27, 2011, thirty-four days after the vehicle was impounded, the State filed a complaint for forfeiture of the money.

{4} The district court granted Defendant's motion for dismissal of the forfeiture complaint on the ground that it was not timely filed under NMSA 1978, Section 31-27-5(A) (2002) of the Forfeiture Act, which states that "[w]ithin thirty days of making a seizure, the state shall file a complaint of forfeiture or return the property to the person from whom it was seized." The State appealed.

**DISCUSSION**

{5} The issue presented is whether the statutory thirty-day period was triggered on the date the State took possession of the vehicle and its contents or on the date the State executed the search warrant and discovered the money. We address this statutory construction question as one of first impression. Our review is de novo. *State v. Herrera*, 2001-NMCA-007, ¶ 6, 130 N.M. 85, 18 P.3d 326.

{6} The goal of statutory construction is to give effect to the Legislature's intent. *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494. "[O]ur first step is to look at the language used by the Legislature and the plain meaning of that language." *Martinez v. Cornejo*, 2009-NMCA-011, ¶ 11, 146 N.M. 223, 208 P.3d 443; *see* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."). "Statutory language that is clear and unambiguous must be given effect [and o]nly if an ambiguity exists will we proceed further in our statutory

2

construction analysis." *Albuquerque Bernalillo Cnty. Water Util. Auth.*, 2010-NMSC-013, ¶ 52 (internal quotation marks and citations omitted).

{7} Under this "plain meaning rule" we are guided by the "ordinary meaning" of the words chosen by the Legislature. *Herrera*, 2001-NMCA-007, ¶ 6; *see Martinez*, 2009-NMCA-011, ¶ 11 ("[A] statute should be read according to its natural and most obvious import of language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation." (internal quotation marks and citation omitted). Similarly, "[w]e will not read language into the statute that is not there, especially when the statute makes sense as written." *State v. Brennan*, 1998-NMCA-176, ¶ 5, 126 N.M. 389, 970 P.2d 161. Finally, "[f]orfeitures are not favored at law and statutes are to be construed strictly against forfeiture." *State v. Ozarek*, 1978-NMSC-001, ¶ 4, 91 N.M. 275, 573 P.2d 209.

{8} Applying these principles, we conclude that the language of Section 31-27-5(A) clearly and unambiguously indicates that the Legislature intended forfeiture complaints to be filed within thirty days of the date the State took possession of the subject property. We begin with the definition of the word "seizure." Black's Law Dictionary defines "seizure" as "[t]he act or an instance of taking possession of a person or property by legal right or process[.]" *Black's Law Dictionary* 1564 (10th ed. 2010). Similarly, Merriam-Webster Dictionary states that "seizure" is "the taking possession of person or property by legal process." *Merriam-Webster Dictionary*,

3

http://www.merriam-webster.com/dictionary/seizure (last visited on Dec. 11, 2014). This definition is not only a legal term of art but also has a common meaning and understanding that is applied by the public. Garner's Dictionary of Legal Usage describes the term as "a nontechnical lay word meaning . . . to take possession of (a thing) by legal right." Bryan A. Garner, *Garner's Dictionary of Legal Usage*, 803 (3d ed. 2011) (internal quotation marks omitted). Even Wiktionary[1] defines "seizure" as "[t]he act of taking possession, as by force or right of law." http://en.wiktionary.org/wiki/seizure (last visited Dec. 11, 2014).[2]

---

[1]"Wiktionary, a sister project of Wikipedia, is an open-content dictionary that individuals with access can collaboratively edit to reflect a popular understanding of words. Some courts have turned to Wiktionary to determine a popular understanding of the English language rather than a traditional dictionary definition." *Wallace H. Campbell & Co. v. Md. Comm'n on Human Relations*, 33 A.3d 1042, 1052 n.7 (Md. Ct. Spec. App. 2011) (collecting cases).

[2]Similarly, the definition of "seizure" with the most "up" votes in Urban Dictionary includes the definition "when the police come and take stuff from your house," which, like the other definitions, incorporates the concepts of taking and possessory interests. http://www.urbandictionary.com/define.php?term=seizure (last visited Jan. 22, 2015). Urban Dictionary is "a crowdsourced collection of definitions for slang words that is available on the Internet." James J. Brudney & Lawrence Baum, *Oasis or Mirage: The Supreme Court's Thirst for Dictionaries in the Rehnquist and Roberts Eras*, 55 Wm. & Mary L. Rev. 483, n.73 (2013). Because Urban Dictionary lacks the quality control measures employed by some other consensus-based websites, we cite it here only to demonstrate the common understanding of the term. *See id.*; Jason C. Miller & Hannah B. Murray, *Wikipedia in Court: When and How Citing Wikipedia and Other Consensus Websites Is Appropriate*, 84 St. John's L. Rev. 633, 635 (2010) ("When a court seeks to determine the common meaning of a term or expression, a website that anyone can edit is likely to produce a viable consensus answer.").

{9} This definition of "seizure" is reflected in case law. The U.S. Supreme Court explained that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (internal quotation marks and citation omitted). Similarly, in *State v. Sanchez*, this Court noted that the seizure clauses of the Fourth Amendment of the U.S. Constitution and Article II, Section 10 of the New Mexico Constitution "protect[] notions of possession, at least insofar as [they] appl[y] to objects." 2005-NMCA-081, ¶ 17, 137 N.M. 759, 114 P.3d 1075. In *State v. Ketelson*, the New Mexico Supreme Court considered the reasonableness of an officer's actions where the officer removed the defendant's gun from his vehicle. 2011-NMSC-023, ¶ 19, 150 N.M. 137, 257 P.3d 957. The Court's analysis rested on its recognition that "even a temporary moving of the firearm constituted, to some degree, an interference with [the d]efendant's possessory interest." *Id.* ¶ 23. It recognized that the officer's possession of the gun, however temporary, "may technically be called [a] 'seizure[],' " *id.* ¶ 26, although ultimately the Court determined that the officer's actions were reasonable given the public and officer safety concerns present in that case. *Id.* ¶ 27; *cf. State v. Bomboy*, 2008-NMSC-029, ¶ 10, 144 N.M. 151, 184 P.3d 1045 (concluding that an officer's taking of methamphetamine from the defendant's car did not infringe on the defendant's possessory interest because the defendant did not have a lawful right to possess

5

methamphetamine). Because it "meaningful[ly] interfere[s] with an individual's possessory interests," impoundment of a vehicle is a seizure of the vehicle. *Soldal*, 506 U.S. at 61, 63; *see State v. Reynoso*, 702 P.2d 1222, 1224 (Wash. Ct. App. 1985) ("An impoundment, because it involves the governmental taking of a vehicle into exclusive custody, is a 'seizure' in the literal sense of that term."). By the same logic, the contents of the vehicle were also seized by virtue of being in the impounded car.

{10} Having concluded that the ordinary meaning of "seizure" incorporates the concept of an interference with possession, we next examine that term in the context of the remainder of the statute. In contrast to the statutes of some other states, the remaining language of the Forfeiture Act does not suggest a trigger other than the physical seizure of property. For example, one section of an Arizona statute defines a "'[s]eizure for forfeiture' [as] seizure of property by a peace officer *coupled with an assertion by the seizing agency . . . that the property is subject to forfeiture*." Ariz. Rev. Stat. Ann. § 13-4301(9) (1999) (emphasis added). Another section requires the state to file forfeiture complaints within "sixty days after [the property's] seizure for forfeiture." Ariz. Rev. Stat. Ann. § 13-4308(B) (1988). The Arizona Court of Appeals relied on the definition of "seizure for forfeiture" to hold that the state's complaint for forfeiture was timely even though it was filed approximately seven months after the state impounded the money found in the defendant's car. *In re Approximately $50,000.00 In U.S. Currency*, 2 P.3d 1271, 1275 (Ariz. Ct. App.

6

2000). There, the state had impounded money found in the defendant's car as part of its investigation into money laundering and other charges. *Id.* at 1273. The court found that the definition of "seizure for forfeiture" "clearly states that, in order to constitute a seizure for forfeiture, the state must affirmatively assert that the seized property is subject to forfeiture." *Id.* at 1275. Consequently, it held that, even though the state had possession of the money for months before it filed a forfeiture complaint, it was not until the state asserted its intention to forfeit it that the sixty-day period began. *Id.* The court stated, "because the state initiated forfeiture proceedings at the same time it declared seizure of the currency for forfeiture, it clearly did not violate the statute's requirement that it initiate such proceedings within sixty days." *Id.*

{11} *Commonwealth v. Brunson* presents a variation on the facts in this case. 448 S.E.2d 393 (Va. 1994). There, the Supreme Court of Virginia considered whether the triggering event for the ninety-day period in Virginia's forfeiture statute began when the Commonwealth took physical custody of the property or when it "declared its decision to seek forfeiture of the property." *Id.* at 396. The relevant statute stated that "[w]hen property has been seized under [Virginia's forfeiture laws] . . . prior to filing an information, then an information against that property shall be filed within 90 days of the date of seizure or the property shall be released to the owner or lien holder." Va. Code Ann. § 19.2-386.3(A) (West 2012). The Commonwealth relied

7

on the phrase "under [Virginia's forfeiture laws]" to argue that "although physically seized substantially before the informations were filed, [the property] was not 'seized for forfeiture' until shortly before filing the necessary informations, well within the limitations period." *Brunson*, 448 S.E.2d at 396. The Virginia Supreme Court rejected this construction of the statute, stating that:

> The Commonwealth's theory transforms the seizure from an event occurring at a readily determined and objective point in time into an event, subjective in nature, whose occurrence is known only to the Commonwealth. Furthermore, the timing of this subjective event is within the absolute discretion of the Commonwealth. Only the Commonwealth knows when the seizure changed from 'evidentiary' to 'forfeiture.' This theory of seizure can effectively defeat any allegation that the information was not filed within the [ninety]-day limitation period and renders meaningless the apparent protection afforded property owners-releasing property if no information is filed within 90 days of seizure.

*Id.* (footnote omitted).

{12} Unlike Arizona's statute, Section 31-27-5(A) does not include a specific definition of "seizure," *see* Section 31-27-3, and includes even less qualifying language than the Virginia statute addressed in *Brunson*. There being no language suggesting that the word "seizure" has a meaning other than the common one, we conclude that the Legislature intended the word "seizure" to have its ordinary meaning. That meaning is clear and unambiguous; hence, no further construction of Section 31-27-5(A) is necessary. *Martinez*, 2009-NMCA-011, ¶ 11 ("This plain meaning rule requires us to give effect to the statute's language and refrain from

8

further interpretation when the language is clear and unambiguous."). Thus, the clock started when the officers impounded Defendant's car and its contents on June 23, 2011. Since the State failed to file a complaint for forfeiture within thirty days of that date, the district court properly dismissed the forfeiture action.

**CONCLUSION**

{13}     For the foregoing reasons, we affirm.

{14}     **IT IS SO ORDERED.**


_____
                                    **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**


_____
**M. MONICA ZAMORA, Judge**