# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: _____**

**Filing Date:   September 10, 2015**

**NO. 34,085**

**KENNETH BADILLA,**

      Plaintiff-Petitioner,

v.

**WAL-MART STORES EAST INC.,**
**d/b/a WAL-MART #850, et al.,**

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**C. Shannon Bacon, District Judge**

Narciso Garcia, Jr.
Albuquerque, NM

for Petitioner

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jeffrey M. Croasdell
Patrick M. Shay
Thomas A. Outler
Albuquerque, NM

for Respondent

**OPINION**

**VIGIL, Chief Justice.**

{1}   We are called upon to decide whether a complaint for breach of warranty seeking damages for personal injury under the Uniform Commercial Code (UCC) is governed by the four-year statute of limitations for suits based on the sale of goods, or whether the three-year statute of limitations for tort applies.

{2}   Kenneth Badilla (Plaintiff) bought a pair of work boots at Wal-Mart. He claims the soles of the boots came unglued, causing him to trip and injure his back. More than three years later, on September 20, 2007, he sued Wal-Mart and its store manager (Defendants) for breach of express and implied warranties. In his complaint Plaintiff seeks damages for personal injuries he claims were caused by the boots' alleged failure to conform to their warranties. Defendants moved for summary judgment, which the district court granted on two grounds: first, that Plaintiff's complaint was time-barred by the application of the three-year statute of limitation for causes of action for torts in NMSA 1978, Section 37-1-8 (1976) rather than the four-year statute of limitation period in the UCC under NMSA 1978, Section 55-2-725(1) (1961); and second, that there were no genuine issues of material fact to rebut Plaintiff's inability to establish the elements for breach of express and implied warranty.

{3} Plaintiff appealed the district court's grant of summary judgment in Defendants' favor to the Court of Appeals. *Badilla v. Wal-Mart Stores E., Inc.*, 2013-NMCA-058, 302 P.3d 747. The Court of Appeals affirmed the district court's grant of summary judgment on the statute of limitations issue, and because its determination on that issue was dispositive, it abstained from addressing the second basis upon which the district court granted summary judgment. *Id.* ¶ 16.

{4} Plaintiff sought review of the Court of Appeals' decision by petition for writ of certiorari, asking this Court to determine whether his claims for personal injury damages resulting from breach of warranties were subject to the four-year limitation period set out in Section 55-2-725 or the three-year limitation period for tort actions found in Section 37-1-8.[1] *Badilla v. Wal-Mart Stores E., Inc.*, *cert. granted*, 2013-NMSA-005. We granted Plaintiff's petition and reverse the Court of Appeals. We hold that the UCC's four-year statute of limitation governs breach of warranty claims, including those seeking damages for personal injuries resulting from the breach.

---

[1]While we acknowledge that Section 37-1-8 refers to actions for personal injuries without explicit reference to tort claims, this statute governs general tort claims. Therefore, this opinion refers to it as the "tort statute of limitation" for ease of reference. *See Sam v. Sam*, 2006-NMSC-022, ¶ 3, 139 N.M. 474, 134 P.3d 761 (noting that Section 37-1-8 provides the "statute of limitation[] for general tort actions").

2

# I.    BACKGROUND

{5}    Plaintiff, a tree trimmer, purchased a pair of Brahma brand men's work boots from Wal-Mart on October 19, 2003. The boots' packaging described the boots as "iron tough," "rugged leather . . . men's work boots." The label also stated that the boots "me[t] or exceed[ed] ASTM F2413-05 standards," which "outlin[e] what footwear employers must ensure employees use under the Occupational Safety and Health Administration, which requires protection against falling or rolling objects, objects piercing the sole, and when an employee's feet are exposed to electrical wires." *Badilla*, 2013-NMCA-058, ¶ 2 & 2 n.1 (citing 29 C.F.R. § 1910.136 (2009)). Plaintiff wore the boots eight to twelve hours per day, six days a week, for about nine months. He claims that as the sole of "the boots wear down[,] the yellow rubber piece tends to unglue itself and roll up as you are walking, making it very dangerous when working." Plaintiff states that this unglued piece of the sole of the boots caused him to trip, fall over, and injure his back.

{6}    On July 28, 2004, Plaintiff was wearing the boots while at work cutting down dead tree limbs and removing the logs. When he began to move a log weighing about 150 pounds, the unglued sole of his boot got caught on debris, causing him to fall backwards and drop the log on top of himself. He immediately felt a sharp pain in his

3

back. The next morning, he was unable to get out of bed due to his back pain, and was driven to the emergency room. He had x-rays and an MRI, which showed that he had two ruptured or bulging discs. Following five or six months of physical therapy, Plaintiff eventually underwent back surgery.

{7} Plaintiff filed his complaint against Defendants alleging breach of warranties on September 20, 2007, about three years and two months after the accident. In his complaint, Plaintiff seeks damages for personal injuries caused by the allegedly defective boots based upon (1) breach of express warranty, (2) breach of implied warranty of merchantability, and (3) breach of implied warranty of fitness for a particular purpose. These claims are brought pursuant to the UCC as set forth in NMSA 1978, Sections 55-2-313 to -315 (1961), respectively. Defendants answered the complaint and raised affirmative defenses, including the assertion that Plaintiff's damages were barred by the statute of limitations.

{8} Defendants filed a second motion for summary judgment, arguing that Plaintiff's complaint was time-barred by the three-year tort statute of limitations under Section 37-1-8. Defendants also argued that, while Plaintiff had "establishe[d] the existence of an express warranty based on the product description printed on the packaging," he had failed to assert that Defendants engaged in "any specific acts [that

4

would] constitute a breach of that warranty," and failed to show how the boots failed to conform with any implied warranties. Defendants argued that there were no genuine issues of material fact at issue on either basis, and that they were entitled to summary judgment. The district court agreed with Defendants on both grounds, and granted summary judgment in their favor under Rule 1-056 NMRA.

{9}     Plaintiff appealed the district court's grant of summary judgment to the Court of Appeals. *Badilla*, 2013-NMCA-058, ¶ 4. The Court of Appeals addressed only the first issue and affirmed the district court's grant of summary judgment, holding that "when a personal injury is the basis for a breach of warranty suit, the essence of the injury should govern which statute of limitation applies." *Id.* ¶ 12. Thus, the Court of Appeals concluded that because Plaintiff's claims were "undisputedly for personal injury, rather than loss based on the commercial value of the boots, [they] must remain subject to the three-year . . . statute of limitation" for torts. *Id.* The Court of Appeals found that its determination of the statute of limitations issue was dispositive, and for this reason it did not address the second basis upon which it granted certiorari to the district court—whether there was indeed no genuine issue of material fact as to Plaintiff's inability to establish the elements necessary to prove breach of warranty. *Id.* ¶ 16.

{10}     Plaintiff petitioned this Court for a writ of certiorari, which we granted in order to review whether the "essence of the injury should govern which statute of limitation applies" in a breach of warranty suit seeking damages for personal injury caused by the breach. *Id.* ¶ 12. We hold that it does not.

**II.     DISCUSSION**

{11}     The central issue is whether the four-year statute of limitation period applies to claims under the UCC seeking damages for personal injury sustained from a breach of warranty, or whether the three-year statute of limitation period for claims based in tort applies. In deciding this issue, we first examine the development of the UCC, and then proceed to review the language of the statute, to discern the Legislature's intent behind its adoption of the UCC statute of limitation. In doing so, we conclude that the UCC statute of limitation applies to actions for breach of warranty where a party seeks to recover damages for personal injuries. Further, we acknowledge that other jurisdictions join one of two main approaches in addressing this issue, and conclude that the majority approach is most consistent with the law in New Mexico. Finally, we conclude that Plaintiff asserts breach of warranty claims seeking personal injury damages. Therefore the UCC statute of limitation governs his claims. Accordingly, we reverse and remand to the Court of Appeals for consideration of whether there

was a genuine issue of material fact precluding summary judgment on the merits of Plaintiff's claims, which the Court of Appeals did not reach in its initial opinion on this case.

**A.      Standard of Review**

{12}      Our determination of the applicable statute of limitations requires us to interpret the statutory scheme of our UCC. "Interpretation of a statute is an issue of law . . . [which w]e review . . . de novo." *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 14, 128 N.M. 309, 992 P.2d 860 (internal quotation marks and citation omitted). "When this Court construes statutes, our charge is to determine and give effect to the Legislature's intent." *Moongate Water Co. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405 (internal quotation marks and citation omitted). "To discern the Legislature's intent, the Court look[s] first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (alteration in original) (internal quotation marks and citation omitted). "Where the language of a statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (internal quotation marks and citation omitted). "When interpreting a statute, we are

also informed by the history, background, and overall structure of the statute, as well as its function within a comprehensive legislative scheme." *Id.* ¶ 15 (internal quotation marks and citation omitted). We apply these principles in interpreting the UCC statutory scheme in order to decipher whether the Legislature indeed intended to allow for the recovery of damages for personal injuries resulting from a breach of warranty. We begin by reviewing the history and purpose of the UCC.

**B.      History and Purpose of the UCC**

{13}      The UCC was developed by the joint efforts of the National Conference of Commissioners on Uniform State Laws and the American Law Institute beginning in the 1940s. 1 William D. Hawkland & Frederick H. Miller, *Uniform Commercial Code Series* § 1-101:1 [Rev.] (2012). The first official text of the Code was published in 1952 and first adopted by Pennsylvania in 1953. *Id.* The Code was revised in 1957 based in part on lessons gleaned from Pennsylvania's experience, and other states gradually began adopting the Code. *Id.* "The UCC, and the subsequent revisions of it, [were] presented to the various state legislatures for adoption, but only bec[a]me the law of a respective state when adopted by that state's legislature." Henry D. Gabriel, *The Revisions of the Uniform Commercial Code—Process and Politics*, 19 J.L. & Com. 125, 130 (1999). "[B]ecause the individual states have the power to

adopt whatever version or modifications the state pleases, there is a substantial amount of non-uniformity among the states." *Id*.

{14} New Mexico adopted the UCC in 1961. NMSA 1978, §§ 55-1-101 to 55-12-111 (1961, as amended through 2013). As the UCC has been revised and updated over the years, New Mexico has adopted these revisions. *See, e.g.*, 2005 N.M. Laws, ch. 144 ("amending, repealing and enacting certain sections of the NMSA 1978 to accomplish the additions to, deletions from and clarifications of the [UCC]"); 2005 N.M. Laws, ch. 144 § 1 (amending NMSA 1978, § 55-1-101 (2005)).

{15} The purposes of the UCC are: "(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions." NMSA 1978, § 55-1-103(a) (2005). The Legislature indicated that the UCC "must be liberally construed and applied to promote [these] underlying purposes and policies." *Id.* Further, "[t]he remedies provided by the [UCC] must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." NMSA 1978, § 55-1-305(a) (2005).

{16} The statute of limitation which governs causes of actions under the UCC is

established by Section 55-2-725. The Legislature explained that the purpose of Section 55-2-725 is "[t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred." *Id*. cmt. However, the scope of the causes of action governed by this section of the UCC has not been universally agreed upon. *See* 63B Am. Jur. 2d *Products Liability* § 1448 (2015) ("[W]hether a plaintiff is required to bring an action for personal injury . . . that is based upon breach of an implied warranty within the limitations period specified in the [UCC] or within the limitations period specified in a statute relating to torts, is a problem that has received considerable judicial attention and has resulted in a split of authority among the various jurisdictions that have addressed the problem."). This is the central issue we are called upon to decide in this case: which, if any, approach is consistent with New Mexico law.

{17}  The Court of Appeals aptly observed that, "[a]lthough other jurisdictions have addressed the issue of whether personal injury or UCC time limits apply to such cases with disparate results, New Mexico lacks a definitive rule." *Badilla*, 2013-NMCA-058, ¶ 9. We agree, and with this opinion fill that chasm in New

10

Mexico law. Having framed this issue in the context of the history and purpose of the UCC, we proceed to interpret New Mexico's UCC statute to determine to what claims the Legislature intended that it apply.

**C.      There Are Two Main Approaches to Determining Whether a Particular Claim Asserts a Cause of Action Governed by the UCC's Statute of Limitations**

{18}      "Courts in other jurisdictions have reached varying conclusions as to when an action is governed by the limitations period of the UCC." *Wieser v. Firestone Tire & Rubber Co.*, 596 F. Supp. 1473, 1475 (D. Colo. 1984). These varying conclusions have created two main approaches to the issue: the majority approach and the minority approach.[2] *Id.*

---

[2]An additional approach to determining which statute of limitation applies in cases such as this holds that the UCC period governs all actions for breach of warranty, regardless of the remedy sought, so long as there is privity between the parties. *See Wieser,* 569 F. Supp at 1475; *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 16 (Utah 1990). The New Mexico Legislature has effectively eliminated the need for analysis of privity in the context of express or implied warranties under the UCC. *See* § 55-2-318 ("A seller's warranty whether express or implied extends to any natural person who is in the family or household of his [or her] buyer or who is a guest in his [or her] home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."); *id.* cmt. 2 ("The purpose of this section is to give certain beneficiaries the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity.' "). The Legislature has indicated its intent not to rely on privity to determine the persons entitled to bring an action asserting those warranties. Therefore we find it unnecessary to consider this approach.

{19} To start with, "[t]he majority [approach holds] that the UCC limitations period applies to all actions for breach of warranties, regardless of whether the plaintiff seeks personal injury damages or economic and contractual damages." *Id.* This approach essentially looks to the nature of the right asserted; if the right is based in contract, it is subject to the UCC. The minority approach "holds that the type of damages sought in an action determines whether the statute of limitations in [UCC] § 2-725 applies," thus, "[a]ctions for personal injury damages or tortious injury to personal property are governed by general, non-[UCC] limitations periods, while actions for economic or breach of contract damages are governed by § 2-725." *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 16 (Utah 1990). The minority approach focuses upon the remedy sought: if the remedy sought is economic damages, the claim is subject to the UCC; if the remedy sought is personal injury damages, the claim is not subject to the UCC. We turn to the specific language used in our statute to decipher whether the Legislature intended to adopt one approach or the other.

**D. The Plain Language of New Mexico's UCC Statute Denotes the Legislature's Intent That the UCC Statute of Limitation Governs Breach of Warranty Claims Which Seek Damages for Personal Injuries**

{20} This case requires us to interpret New Mexico's UCC statute. "Our primary

12

goal when interpreting a statute is to determine and give effect to the Legislature's intent." *Cook v. Anding*, 2008-NMSC-035, ¶ 7, 144 N.M. 400, 188 P.3d 1151. "We do so by first looking to the statute's plain language and giving effect to the plain meaning of the words therein." *Id.* We now turn to the relevant UCC statutory provisions.

{21} Article 2 of the UCC applies to sales of goods and is codified at Sections 55-2-101 to -725; *see* § 55-2-102 ("[T]his article applies to transactions in goods."). "A 'sale' consists in the passing of title from the seller to the buyer for a price." Section 55-2-106(1). " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid . . . ." Section 55-2-105(1). "The law of warranty for sales of goods is codified at NMSA 1978, Sections 55-2-312 to -318. . . ." *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 15, 119 N.M. 436, 891 P.2d 1190, *overruled on other grounds by Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶¶ 14, 16, 301 P.3d 387.

{22} Article 2 also sets out the various warranties that apply to sales of goods. These include express warranties and implied warranties of merchantability and fitness for a particular purpose, among others. Sections 55-2-313 to -315 establish the methods

13

by which express and implied warranties are created. *See* § 55-2-313(1) ("Express warranties by the seller are created as follows . . . ."); § 55-2-314(1) ("Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." (citation omitted)); § 55-2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.").

{23}    If the goods provided are not as warranted, the goods are in breach of warranty. "A breach of warranty presents an objective claim that the goods do not conform to a promise, affirmation, or description, or that they are not merchantable." *Jaramillo v. Gonzales*, 2002-NMCA-072, ¶ 13, 132 N.M. 459, 50 P.3d 554. "A breach of warranty occurs when tender of delivery is made . . . ." Section 55-2-725(2). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.*

{24}    The UCC also establishes the remedies available under a cause of action for breach of warranty. "For breach of warranty the buyer may recover direct, incidental,

and consequential damages." *Manouchehri v. Heim*, 1997-NMCA-052, ¶ 10, 123 N.M. 439, 941 P.2d 978; *see also* § 55-2-714 ("[B]uyer [who] has accepted goods and given notification . . . may recover as damages . . . the loss resulting in the ordinary course of events from the seller's breach . . . . The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . ." and "[i]n a proper case any incidental and consequential damages under [Section 55-2-715] may also be recovered." (citation omitted)). Section 55-2-715(2) provides:

> Consequential damages resulting from the seller's breach include:
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

Section 55-2-725 sets forth the statute of limitation for such causes of action. It provides, in pertinent part:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of

15

warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

{25} The Legislature has thus clearly established that: (1) a seller's breach of express or implied warranties creates in the buyer a cause of action; (2) consequential damages, *including those for personal injuries*, are available pursuant to such cause of action; and (3) the statute of limitation applicable to that cause of action is four years. The four-year deadline for filing suit under the UCC for breach of warranty of goods sold in New Mexico is clearly and unambiguously set forth in the statute. *See State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289 (stating that when statutory language is unambiguous, "we follow the language, and . . . [our] inquiry is complete"). Accordingly, we apply the statute as it is written. *See Aeda v. Aeda*, 2013-NMCA-095, ¶ 11, 310 P.3d 646 ("[I]t is . . . the responsibility of the judiciary to apply the statute as written." (omission in original) (internal quotation marks and citation omitted)). We hold that by expressly including the cause of action, as well as the remedy, in Section 55-2-725, which creates the limitation period for claims brought pursuant to the UCC, the Legislature intended to establish a four-year statute of limitation period for all breach of warranty claims, including those seeking

16

damages for personal injury caused by the breach. We conclude that the New Mexico Legislature had in mind that the four-year statute of limitations period in Section 55-2-725 would apply to the very cause of action Section 55-2-725 recognizes.

{26}   In deciding this issue, other courts have likewise concluded that the cause of action for breach of warranty established by Section 55-2-725 should be subject to the limitation period provided in that same section. *See Needle v. Lasco Indus., Inc.*, 89 Cal. Rptr. 593, 594 (Cal. Ct. App. 1970) ("Since one of the purposes of the Commercial Code is to make uniform the law among the various jurisdictions . . . cases [from other states] are compelling authority which we accept." (internal quotation marks and citation omitted)). We find that the reasoning provided in the following cases is helpful in informing our analysis of this issue under New Mexico law. *See, e.g.*, *Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154, 158 (Del. 1980) (holding that "it [is] completely logical that a statutory remedy have its period of limitation governed by the limitation provision of the [s]tatute that created the remedy"); *Di Prospero v. R. Brown & Sons, Inc.*, 494 N.Y.S.2d 181, 182 (N.Y. App. Div. 1985) (holding that "UCC 2-715(2) specifically states that [c]onsequential damages resulting from the seller's breach include . . . injury to person or property proximately resulting from any breach of warranty. Thus, it is clear that consequential

17

damages under the UCC include personal injury to a buyer proximately resulting from a seller's breach of warranty." (alteration in original) (internal quotation marks omitted)); *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 462 (Tex. 1980), quoting *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550, 553 (Ill. 1974) (adopting Illinois' holding that UCC Sections 2-314, -715, -719, and -725 "clearly demonstrate the legislative intent to create a statutory cause of action for breach of implied warranty to afford consumer protection to those who sustain personal injuries resulting from product deficiencies. This remedy is distinct and in addition to that existing in strict tort liability."). We find such reasoning to be persuasive and see no reason to depart from it in New Mexico.

**E.      Our Interpretation of New Mexico's UCC Statute is Consistent with the Majority of Other States, Which Furthers the Goal of Uniformity Under the UCC**

{27}      While the plain language of the UCC compels this Court to conclude that the Legislature intended that the four-year limitation period set forth in the UCC governs a breach of warranty claim, including those claims which seek damages for personal injuries in furtherance of the UCC's important goal of uniformity, we also consider the two main approaches taken by other states in deciding this issue. Upon doing so, we adopt the approach taken by a majority of other states, which informs our analysis

and is consistent with New Mexico law.

{28}    The Sixth Circuit addressed this issue under Michigan's UCC statute in *Reid v. Volkswagen of America, Inc.*, 512 F.2d 1294 (6th Cir. 1975). Having reached the same conclusion as we do regarding the Legislative intent behind Michigan's UCC statute, the Sixth Circuit explained why the majority approach is consistent with the statute's purposes. *Id.* at 1296. We find this case highly informative, given that both the facts and the law are quite similar to those in the case before us.

{29}    In *Reid*, the plaintiff sued the manufacturer and distributor of the car she was driving when she was involved in a wreck, arguing that the car was defective because "on impact, the left front seat of the Volkswagen broke loose from the floor of the car, causing plaintiff to be thrown about the car," and "claiming that her injuries resulted from defendant's breach of express and implied warranties of fitness of the automobile." *Id.* at 1295. The plaintiff filed suit "more than three years and less than four years after the . . . accident." *Id.* The Michigan statute establishing a three-year statute of limitations on actions "for injuries to persons and property" had last been "reenacted in 1961, to be effective in 1963 . . . ." *Id.* at 1295-96. The Sixth Circuit acknowledged that jurisdictions are split among two main approaches to this issue, as we recognized above, and considered the history of Michigan's UCC as well as the

19

language of the Michigan statute for guidance. *Id.* at 1295-97. Michigan adopted the UCC in 1962, to take effect in 1964. *See id.* at 1296. Therefore, the three-year personal injury statute was adopted, but not yet in effect, when the UCC was adopted. *Id.* The Sixth Circuit noted that the UCC "contained no general repealer section and made no reference to the three-year personal injury limitation in the earlier general limitation statute." *Id.* Then, based on the language of the statute, the Sixth Circuit held that the UCC applies the plaintiff's claims and permitted recovery of personal injury damages, thereby adopting the majority approach. *Id.* at 1297. The *Reid* court gave six reasons to support its holding. *Id.* at 1297-98.

{30}     First, the plaintiff's "complaint [wa]s filed under and in specific reference to Michigan's [UCC]." *Id.* at 1297. Second, "[t]he plain language of Michigan's [UCC] limitation section encompasses plaintiff's case." *Id.* Third, "[th]e Michigan [UCC]'s limitation section was adopted to be effective January 1, 1964, subsequent to the general limitation section which was adopted effective January 1, 1963, and hence, should be regarded as having amended it (by implication) as it pertains to warranty actions." *Id.* Fourth, "[t]he Michigan [UCC] limitation is specific as opposed to the general limitation statute, and hence, should be given effect. *Id.* Fifth, "[g]enerally the courts (absent a showing of prejudice on the part of defendant) tend to favor the

longer of two limitation statutes." *Id.* Finally, "[a]lthough nationwide the courts are divided on whether a state tort limitation statute or the [UCC] limitation statute prevails, we believe the [UCC] statute is the only uniform statute possible and that adopti[ng] its limitation [period] will favor uniformity amongst the states in an important area of commercial law," which the Michigan Legislature specifically stated as one of the purposes of adopting the UCC. *Id.*

{31} The analysis taken by the *Reid* court presents a logical and persuasive approach to determining the central issue in the instant case. It also furthers the fundamental policy of uniformity embraced by the Legislature through its enactment of the UCC in New Mexico. Accordingly, we apply its six-part rationale in addressing the issue before us. We address *Reid*'s second, fifth, and sixth reasons for its holding here, and the remaining reasons in discrete sections of this opinion.

{32} *Reid* reasoned that the plain language of Michigan's UCC indicated that the UCC governed the plaintiff's claim, and we have reached the same holding in this case. *Id*. at 1297. *Reid* also reasoned that "[g]enerally the courts (absent a showing of prejudice on the part of defendant) tend to favor the longer of two limitation statutes." *Id*. at 1297. New Mexico law also favors statutes of limitation which permit, rather than bar, causes of action. *See First Nat'l Bank in Albuquerque v. Chase*,

21

1994-NMSC-127, ¶ 17, 118 N.M. 783, 887 P.2d 1250 (Franchini, J., dissenting) (noting that New Mexico has long held that "law favors the right of action over a limitation"). *Reid* further reasoned that its holding aligned with the majority of courts that have addressed this issue, which furthered the UCC's goal to "make uniform the law among the various jurisdictions." 512 F.2d at 1297-98 (internal quotation marks and citation omitted). Our holding achieves the same goal, and is consistent with the Legislature's mandate that the UCC "be liberally construed and applied to promote its underlying purposes and policies," and its remedies liberally administered. Section 55-1-103(a); *see also* § 55-1-305(a) ("The remedies provided by the [UCC] must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . . ."). We find the majority approach taken by other states, particularly as illustrated in *Reid*, to be persuasive in that it not only embraces the plain language in the statute, which reveals the Legislative intent to apply the UCC limitation period to breach of warranty claims seeking damages for personal injuries, but also furthers the important public policies embodied in the UCC.

**F.     We Reject the Minority Approach**

{33}     In deciding this issue, the Court of Appeals aligned New Mexico with the

22

minority approach. *Badilla*, 2013-NMCA-058, ¶¶ 9-12. The minority approach looks to the remedy sought, not the right asserted, to determine the applicable statute of limitations; this is contrary to New Mexico law.

{34} The Court of Appeals concluded that Plaintiff's "injuries were personal, rather than related to any failure of the purchase of the boots," implying that a claim must seek recovery of economic damages in order to fall under the UCC. *Id.* ¶ 8. The Court of Appeals held that "when a personal injury is the basis for a breach of warranty suit, the essence of the injury should govern which statute of limitation applies." *Id.* ¶ 12. The Court of Appeals therefore concluded that because the essence of Plaintiff's injury was personal, the tort statute of limitations applied because it governs "injury to the person," and foreclosed application of the UCC because it "applies to cases involving the sale of goods." *Id*. ¶¶ 7, 12 (internal quotation marks and citation omitted).

{35} Defendants implore this Court to do as the Court of Appeals did—align New Mexico with the minority approach and regard the remedy of damages for personal injuries as paramount to the determination of the nature of the right sued upon, and thus determinative of which statute of limitations period should apply. *See id*. ¶ 10. This approach "holds that the type of damages sought in an action determines whether

the statute of limitations in [UCC] § 2-725 applies," thus, "[a]ctions for personal injury damages or tortious injury to personal property are governed by general, non-[UCC] limitations periods, while actions for economic or breach of contract damages are governed by § 2-725." *Davidson*, 794 P.2d at 16. Courts adopting this approach reason that "[w]here the injury is personal, the statute relating to personal injury actions applies." *Kinney v. Goodyear Tire & Rubber Co.*, 367 A.2d 677, 680 (Vt. 1976).

{36} We decline Defendants' invitation to adopt the minority approach and shape the nature of the claim to conform to the relief requested. We conclude that the minority approach is inconsistent with our Legislature's intent in adopting the UCC. We find the rationale taken by the Kansas Court of Appeals in rejecting the minority approach to be informative and persuasive. *See Golden v. Den-Mat Corp.*, 276 P.3d 773, 787 (Kan. Ct. App. 2012). It provides an excellent illustration of the aberrational outcomes that may result from allowing a plaintiff's requested damages to dictate the cause of action asserted. *Id*.

{37} In *Golden*, a patient who hoped to have extremely white teeth purchased porcelain veneers from a dentist, who marketed the veneers, sold them to the patient, and put the veneers in place. *Id*. at 780-81. The patient alleged that after 15 months

24

of wear, "the veneers became discolored and stained despite representations" by the dentist and the manufacturer (the defendants) "that [the veneers] would retain their appearance." *Id*. at 781, 782. The veneers were covered by a written five-year limited warranty. *Id*. at 782. The patient sued the defendants, "alleging breach of express warranties regarding the veneers and breach of implied warranties of merchantability and fitness for a particular purpose," among other claims. *Id*. at 783. The defendants argued that the patient was "asserting a tort-based products liability claim" because she sought damages for pain and suffering, along with other remedies. *See id*. at 785. The Kansas Court of Appeals said "the notion that a plaintiff's requested monetary damages define the cause of action rather than the stated cause of action defining the appropriate monetary remedies borders on the nonsensical." *Id.* at 786. It then illustrated the absurdity of this proposition: if the remedy requested defined the cause of action asserted, then if the patient had sought treble damages as a remedy, her warranty claims could be treated as "alleged violations of federal antitrust laws, 15 U.S.C. § 15 (2006), or the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c) (2006), since they permit such a recovery," even though the complaint "did not state claims under either of those federal statutory schemes." *Golden*, 276 P.3d at 786.

{38}     The Kansas Court concluded that "the district court would have had no more business dismissing the suit on [the basis of the remedy requested] than it did in declaring the claims to be torts filed past the limitations deadline because [the plaintiff] asked for pain and suffering damages." *Id*. It held that "the monetary damages [should be conformed] to the claims, not the other way around," explaining that "[t]he proper approach is to [determine the nature of the claim and] disallow [any] damages inconsistent with [that] claim." *Id*. We adhere to the proposition that the nature of the claim determines the available remedies. Thus, in determining which statute of limitations governs a claim, we first identify the nature of the claim asserted, which then establishes the available remedy, not the other way around. Such an approach is consistent with the legislative mandate that we construe statutes so as to avoid absurd results. NMSA 1978, § 12-2A-18 (1997). Therefore, we conclude that the minority approach is inapposite to both the policies upon which the UCC is based, as well as the manner in which claims are addressed—which must focus upon the nature of the right asserted, rather than the remedy sought.

**G.     Pre-UCC Cases Do Not Govern Which Statute of Limitations Applies to Causes of Action Which Accrued After the UCC Took Effect**

{39}     Defendants contend that the minority approach is consistent with New Mexico law, because "[i]t has long been preceden[t] that when the essence of a plaintiff's

26

claim is for personal injury, the three-year personal injury statute of limitations applies, even though the cause of action is framed as an action in contract." Defendants therefore argue that if this Court adopts the majority approach, we will be "legislat[ing] judicially by providing that the UCC limitations period applie[s] to personal injury claims in simple product liability cases," because the Legislature had the opportunity to do so but chose not to. Defendants argue that *Chavez v. Kitsch*, 1962-NMSC-122, 70 N.M. 439, 374 P.2d 497, governs the analysis of which statute of limitation applies in this case and mandates our adoption of the minority approach.

{40} *Chavez* is distinguishable from the case at bar because it dealt with a cause of action that accrued before the UCC took effect. The UCC first took effect in New Mexico at midnight on December 31, 1961, and "applie[d] to transactions entered into and events occurring after that date." 1961 N.M. Laws, ch. 96, § 10-101. In *Chavez*, the alleged breach of warranty occurred on February 5, 1956, when the plaintiffs bought a house that was unfit for habitation. 1962-NMSC-122, ¶ 1. Thus the provisions of the UCC did not apply to an action which accrued in February 1956. While we agree with the Court of Appeals that "New Mexico has *historically* distinguished claims for personal injuries from contractual claims," we conclude that our Legislature nullified the arbitrary distinction of claims based solely on the remedy

sought when it adopted the UCC. *Badilla*, 2013-NMCA-058, ¶ 11 (emphasis added). By adopting the UCC, the Legislature intended to circumscribe the scope of claims that the tort statute of limitation in Section 37-1-8 governs, in order to usher claims for breach of warranty based in contract, which seek damages for personal injuries, into the realm of the UCC.

## H.    Plaintiff's Claims Are Governed by the UCC

{41}    We next determine the nature of Plaintiff's claims, and whether Plaintiff asserts those claims under the UCC. In doing so, "[w]e look to the nature of the right sued upon, and not the form of action or relief demanded, to determine the applicability of the statute of limitations to a cause of action." *Martinez v. Cornejo*, 2009-NMCA-011, ¶ 29, 146 N.M. 223, 208 P.3d 443 (alterations in original omitted) (internal quotation marks and citation omitted). The UCC governs contracts for sales, including the present sale of goods. Section 55-2-106(1). A " '[c]ontract for sale' includes . . . a present sale of goods," which "means a sale which is accomplished by the making of the contract." *Id*. "A 'sale' consists in the passing of title from the seller to the buyer for a price." *Id*. (citation omitted). A contract for sale encompasses "the total legal obligation that results from the parties' agreement as determined by the [UCC] as supplemented by any other applicable laws." Section 55-1-201(b)(12).

28

Under the UCC, "[g]oods . . . conform to the contract when they are in accordance with the obligations under the contract." Section 55-2-106(2). If one of the parties to the contract fails to meet their obligation to ensure that the goods conform, this "constitutes a breach of the contract, giving rise to a remedy, typically damages." UJI 13-822 NMRA Committee Commentary. These legal obligations include any warranties made about the goods. *See id*. (stating that the legal obligations of a contract "may be either expressed in the contract or implied, such as any obligation of good faith or implied warranties").

{42}     Plaintiff's purchase of the boots from Wal-Mart was a contract for the present sale of goods. Such contracts are governed by the UCC. *See Sinka v. N. Commercial Co*., 491 P.2d 116, 118 (Alaska 1971) (holding that because "the transaction was a typical sale of goods . . . the sale necessarily was subject to the [UCC]" (footnote omitted)); § 55-2-102 ("Unless the context otherwise requires, this article applies to transactions in goods . . . ."). In his first amended complaint for damages, Plaintiff contends that Defendants made express and implied warranties about the product Plaintiff purchased. Any such warranties gave Plaintiff the right to receive goods which complied with those warranties. If the product Plaintiff purchased was not as warranted, then Defendants breached the contract, and Plaintiff has the right to

recover any damages resulting from the seller's breach of that warranty if the goods do not so comply.

{43} We hold that the nature of the right Plaintiff's claims assert is the right to receive consequential damages as compensation for Defendant's alleged failure to provide Plaintiff with boots that conformed with the warranties Defendants allegedly made. This is a contract-based right. Accordingly, we consider the nature of Plaintiff's claims to lie in contract rather than in tort, and therefore Plaintiff's cause of action is governed by Section 55-2-725 of the UCC. Under this cause of action, incidental and consequential damages, including those for personal injuries, may be recovered pursuant to Section 55-2-714(3). Plaintiff alleged that the boots' failure to conform to their warranties caused him to "suffer damages, including severe, painful and permanent mental and physical injury, loss of earnings and medical expenses," and sought relief "in a reasonable amount to be decided by the trier of fact." Plaintiff therefore seeks damages which are eligible for recovery under Section 55-2-714. This is congruent with our holding that the nature of the claim asserted dictates the remedies available.

{44} Plaintiff's cause of action asserts this claim under the UCC by invoking its statutory language. Again, we find the Sixth Circuit's analysis of whether a claim for

30

breach of warranty was properly brought under the UCC helpful. *See Reid*, 512 F.2d at 1296. While Plaintiff here did not specifically cite the UCC in his complaint, as the plaintiff did in *Reid*, he repeats almost verbatim the language of the UCC statutes which apply to each of his claims, respectively. For example, under his claim for breach of express warranty, Plaintiff asserts: "Defendants made representations, affirmations of fact, promises and descriptions which related to the boots and became part of the basis of the bargain." Compare this to Section 55-2-313(1)(a), stating: "any affirmation of fact, . . . promise[, or description] made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Although Plaintiff did not actually cite these statutes, we find his near-verbatim recitation of their language sufficient to conclude, as the court did in *Reid*, that Plaintiff's claims were "filed under" the UCC. *See* 512 F.2d at 1297.

{45} Defendants argue that, under the majority approach which looks to the nature of the right asserted, Plaintiff's claims are governed by the tort limitation period. Defendants artfully assert that, looking to the nature of the right Plaintiff asserts, "the gravamen of Plaintiff's complaint is a claim for personal injury and nothing more." Therefore, the three-year statute of limitation for tort under Section 37-1-8 should

31

apply. Defendants imply that Plaintiff's claims are governed by the tort limitation period because they are truly "simple product liability" claims. As a threshold matter, this argument assumes that Plaintiff's claim could only be a products liability claim, a proposition with which we disagree. Products liability claims and warranty claims are not mutually exclusive. The fact that products liability in tort is a theory available to plaintiffs does not mean it is the *only* theory plaintiffs may pursue when the case is based on an allegedly defective product. *See Perfetti v. McGhan Med.*, 1983-NMCA-032, ¶¶ 45-47, 99 N.M. 645, 662 P.2d 646 (acknowledging that New Mexico law explicitly provides that both products liability and breach of warranty causes of action are available to plaintiffs). Even if Plaintiff was asserting a claim for products liability, that would not necessarily foreclose his option to assert a warranty claim as well. *See Di Prospero*, 494 N.Y.S.2d at 183 ("[I]t does not follow that merely because a cause of action exists under strict product liability in tort, a separate cause of action under the warranty provisions of the UCC is precluded."); *see also* Introduction to UJI ch. 14 NMRA, Products Liability (noting that the UCC and the doctrine of strict liability in tort "create parallel but independent bodies of product liability law," and "[p]laintiffs may proceed under both theories"; "[n]o election is required").

{46} Further, Defendants' contention that Plaintiff's claims are tort-based ignores the very nature of tort-based products liability claims, which rely on a theory of negligence. *See Fernandez v. Char-Li-Jon, Inc.*, 1994-NMCA-130, ¶ 4, 119 N.M. 25, 888 P.2d 471 (recognizing "[a]n action seeking recovery for personal injury as a result of a defendant's alleged negligence"), *abrogated on other grounds by Romero v. Bachicha*, 2001-NMCA-048, ¶ 16, 130 N.M. 610, 28 P.3d 1151. Defendants overlook the fact that Plaintiff makes no claim for damages based on Defendants' negligence. Defendants point to only one fact which they contend reveals that Plaintiff's claims are truly tort claims: the fact that Plaintiff seeks damages for personal injuries. As we have previously discussed, we will not permit the remedy requested to dictate the nature of the claim. Thus, the outcome Defendants suggest represents the inverse of the rule that we look to the right asserted, not the remedy requested, to determine the nature of a claim: it would require us to look to the remedy requested in order to determine the right sued upon.

{47} While we agree with Defendants' contention that we must determine the true nature of a claim in order to prevent parties from avoiding the shorter tort limitation period by couching their claims in terms of breach of warranty when they are actually tort-based, we do not find this to be true in the case at bar. *See B & B Paint Corp. v.*

*Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1019 (Ind. Ct. App. 1991) (acknowledging that "[i]f a cause of action is actually one for negligence or strict liability, but has been couched in terms of breach of warranty under the UCC solely to avoid the shorter statute of limitations [for products liability actions], the statute of limitations for [p]roduct [l]iability [actions] will apply"). We hold that the nature of the right Plaintiff asserts is based in contract, and therefore the UCC's four-year statute of limitation, which governs actions for breach of warranty seeking personal injury damages, applies.

## I. The Tort and UCC Statutes Do Not Conflict; Therefore Analysis of Which Statute Is More Specific Is Unwarranted

{48}     The parties suggest that a principle of statutory interpretation, sometimes called the "general/specific rule," also supports each of their respective positions. This rule dictates "that when one statute deals with a subject in general terms and another deals with a part of the same subject more specifically, the more specific statute will be considered an exception to the general statute, and will apply." *Prod. Credit Ass'n of S. N.M. v. Williamson*, 1988-NMSC-041, ¶ 5, 107 N.M. 212, 755 P.2d 56. In light of this opinion's foregoing holdings, we find it unnecessary to address this issue.

{49}     As we held above, the tort statute and the UCC statute address distinct causes of action, foreclosing any requirement to apply the general/specific rule of statutory

34

interpretation. It is well established in New Mexico that our tort and UCC bodies of law are parallel, but independent: the UCC governs claims based in contract; the tort limitation governs claims based in negligence. *See Fernandez*, 1994-NMCA-130, ¶ 4 (Section 37-1-8 governs an "action seeking recovery for personal injury as a result of a defendant's alleged negligence"). Because these two bodies of law govern different types of claims, they do not conflict; therefore, we need not decide which one is more specific. *See State ex rel. Madrid v. UU Bar Ranch Ltd. P'ship*, 2005-NMCA-079, ¶ 20, 137 N.M. 719, 114 P.3d 399 ("[T]he general/specific rule of statutory construction applies only when the statutory provisions are conflicting.") (internal quotation marks and citation omitted). Thus, the two statutes are harmonized so that each is given effect. *See Citizens for Incorporation, Inc. v. Bd. of Cty. Comm'rs of Cnty. of Bernalillo*, 1993-NMCA-069, ¶ 20, 115 N.M. 710, 858 P.2d 86 ("If the statutes can be harmonized so that each can be given effect, this Court should do so.").

{50}    Lastly, we turn to the parties' final argument. Defendants argue that Plaintiff's claims are barred on the second ground upon which the district court granted summary judgment in their favor, namely, that "there is no genuine issue of material fact as to Plaintiff's inability to establish required elements of his causes of action for

35

breach of express and implied warranty." Because this issue was not included in the grounds upon which this Court granted Plaintiff's petition for writ of certiorari, we decline to address it. *See* Rule 12-502(C)(2)(d) NMRA (stating parenthetically that "the Court will consider only the questions set forth in the petition"); *State v. Morales*, 2010-NMSC-026, ¶ 19, 148 N.M. 305, 236 P.3d 24 ("Under the appellate rules, it is improper for this Court to consider any questions except those set forth in the petition for certiorari." (internal quotation marks and citations omitted)). The case is remanded to the Court of Appeals to consider the second basis upon which the district court granted summary judgment to Defendants. *See Badilla*, 2013-NMCA-058, ¶ 16.

**III.    CONCLUSION**

{51}    We hold that the UCC four-year statute of limitations for breach of warranty claims governs Plaintiff's claims, rather than the three-year statute for tort claims. We therefore reverse and remand the case to the Court of Appeals for further proceedings consistent with this opinion.

{52}    **IT IS SO ORDERED.**

_____
**BARBARA J. VIGIL, Chief Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**

37